JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, Rafael Carter, appeals his conviction for robbery. After a thorough review of the arguments and for the reasons set forth below, we affirm.
 {¶ 2} On February 17, 2005, appellant was indicted on three counts of aggravated robbery, in violation of R.C. 2911.01, a felony in the first degree; three counts of robbery, in violation of R.C. 2911.02, a felony in the second degree; and one count of carrying a concealed weapon, in violation of R.C. 2923.12, a felony in the fourth degree. The aggravated robbery and robbery charges each carried a firearm specification.
 {¶ 3} At his arraignment on February 23, 2005, appellant pleaded not guilty and opted for a jury trial, which commenced on May 23, 2005. At the close of all evidence, the jury deliberated and found appellant guilty of two counts of aggravated robbery, two counts of robbery, and one count of carrying a concealed weapon.
 {¶ 4} On July 6, 2005, he was sentenced to imprisonment for a term of four years for the aggravated robbery and robbery charges, three years for the firearm specifications, and six months for the concealed weapon charge. The trial court ordered that the concealed weapon sentence be served concurrently with the other sentences, for an aggregate prison term of seven years.
 {¶ 5} The incident that gave rise to the charges against appellant occurred on November 24, 2004. On that evening, he and his accomplices, Sergio Robinson and Gerome Anderson, robbed two men. The victims, Matthew McKay and Joel Ramirez, were sitting next to each other in an RTA bus shelter at the intersection of East 55th Street and Woodland Avenue in the city of Cleveland. McKay had just purchased two pairs of boots from a local store, and Ramirez had just left his job at the Marathon gas station at East 55th Street and Woodland Avenue.
 {¶ 6} As the victims waited for the bus, they were approached by appellant and his accomplices. Appellant brandished a gun and stated, "We are gonna make this quick." Appellant and Robinson stole three dollars from Ramirez. Although McKay gave appellant $360 in cash, he accused McKay of holding out on him and proceeded to steal McKay's cellular phone as well as the boots he had just purchased. Appellant and his accomplices then fled in a silver Jeep that had been parked across the street from the bus shelter.
 {¶ 7} After the robbery, Ramirez and McKay went to the Marathon gas station and called the police. They also reviewed a store surveillance tape, which showed appellant entering the gas station several minutes before the robbery occurred.
 {¶ 8} Appellant, Robinson and Anderson traveled to the west side of Cleveland soon after they robbed McKay and Ramirez at gunpoint, which is where victim Robert Pamplin testified he had been robbed at gunpoint. At trial, Pamplin stated he was at a bus stop on Leeila Street when appellant and three other men got out of a Jeep and robbed him of $70. Pamplin testified that, as appellant and his accomplices fled, he flagged down CMHA police officers and reported the incident.
 {¶ 9} After receiving descriptions of appellant's car from victims McKay, Ramirez and Pamplin, Cleveland police officers spotted the vehicle as appellant was driving on the highway. When appellant noticed he was being followed by the police, he began to weave in and out of traffic, but was eventually boxed in by several police cars and forced to stop. After searching the Jeep, police found the boots, money and cellular phone that had been taken from McKay. In addition, the handgun used during the robberies was also recovered.
 {¶ 10} Appellant brings this appeal, asserting one assignment of error for our review:
 {¶ 11} "I. Appellant was denied effective assistance of counsel as guaranteed by section 11, Article VIII, of the Ohio Constitution and the Sixth and Fourteenth Amendments to the United States Constitution when counsel admitted that appellant was guilty of aggravated robbery instead of allowing the jury to decide and by allowing appellant to testify in spite of appellant's rights against self incrimination."
 {¶ 12} Appellant argues that he was denied effective assistance of counsel during his trial. More specifically, he asserts that his attorney admitted his guilt to the jury and called him to testify as a witness, actions that were both improper and resulted in the jury's guilty verdict. Lastly, he contends that, but for his attorney's misconduct, the outcome of the trial could have differed.
 {¶ 13} In order to substantiate a claim of ineffective assistance of counsel, the appellant is required to demonstrate that: 1) the performance of defense counsel was seriously flawed and deficient; and 2) the result of the appellant's trial or legal proceeding would have been different had defense counsel provided proper representation. Strickland v. Washington
(1984), 466 U.S. 668; State v. Brooks (1986),25 Ohio St.3d 144.
 {¶ 14} In reviewing a claim of ineffective assistance of counsel, it must be presumed that a properly licensed attorney executes his legal duty in an ethical and competent manner.State v. Smith (1985), 17 Ohio St.3d 98; Vaughn v. Maxwell
(1965), 2 Ohio St.2d 299.
 {¶ 15} The Supreme Court of Ohio, with regard to the issue of ineffective assistance of counsel, held in State v. Bradley
(1989), 42 Ohio St.3d 136, that:
 {¶ 16} "When considering an allegation of ineffective assistance of counsel, a two-step process is usually employed. First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness." State v. Lytle
(1976), 48 Ohio St.2d 391, 396-397, 2 O.O.3d 495, 498,358 N.E.2d 623, 627, vacated in part on other grounds (1978), 438 U.S. 910. This standard is essentially the same as the one enunciated by the United States Supreme Court in Strickland v. Washington
(1984), 466 U.S. 668. * * *
 {¶ 17} "Even assuming that counsel's performance was ineffective, this is not sufficient to warrant reversal of a conviction. `An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. Cf. United States v. Morrison, 449 U.S. 361, 364-365 (1981).'Strickland, supra, at 691. To warrant reversal, `[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'Strickland, supra, at 694. In adopting this standard, it is important to note that the court specifically rejected lesser standards for demonstrating prejudice. * * *.
 {¶ 18} "Accordingly, to show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley, supra, at 141, 142.
 {¶ 19} We find no merit in appellant's argument that he was denied effective assistance of counsel. It is undisputed that his attorney conceded to guilt with respect to the robberies against McKay and Ramirez; however, this was a tactical decision in an effort to avoid conviction for the suspected robbery against Pamplin. On the basis of Pamplin's testimony, it was unclear whether he was the victim of a robbery or if a failed drug transaction had occurred. Spotting this weakness, defense counsel focused on Pamplin, rather than McKay and Ramirez.
 {¶ 20} Appellant's attorney was fully aware that McKay and Ramirez were going to testify that appellant was the individual that robbed them at gunpoint. He was also aware that the items stolen from McKay were later found by the police in appellant's car. Knowing that the jury would have an opportunity to hear this very damaging testimony, appellant's attorney felt it would be illogical to deny the robberies against McKay and Ramirez and instead focused on casting doubt on Pamplin's penetrable claims.
 {¶ 21} Defense attorneys often make strategic decisions in an effort to prevent their clients from being convicted or serving the maximum term of incarceration. Appellant's attorney was aware that it would appear quite disingenuous on his client's part to deny the robberies committed against McKay and Ramirez, considering the caliber of evidence that would be admitted at trial. Defense counsel's decision was successful — the jury returned a verdict finding the appellant guilty of the robberies against McKay and Ramirez, but not guilty of the robbery against Pamplin.
 {¶ 22} Appellant now seeks to question his attorney's tactics, but in light of the facts surrounding this case, it is clear that his arguments are without merit. The record gives no indication that, but for his counsel's actions, the outcome of the trial would have differed. On the contrary, the record strongly suggests that had his counsel not taken a strategical approach, he could have been convicted on all counts.
 {¶ 23} Considering the insurmountable evidence presented at trial against appellant, we do not find that his counsel's actions were ineffective when he utilized legal tactics. Accordingly, we find appellant's sole assignment of error without merit.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed. The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kenneth A. Rocco, J., and Patricia Ann Blackmon, J., concur.